FILED

2019 Nov-18  AM 10:02
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **BRYAN HUGHES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NO.** |
| **v.** ) | |
| ) | **1:19-CV-01481-KOB** |
| **LAMAR ADVERTISING** ) | |
| **COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

## LAMAR'S BRIEF SUPPORTING LAMAR'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, MOTION TO STRIKE CLASS ALLEGATIONS

Robert R. Baugh (ASB-0312-A64R)
J.S. "Chris" Christie, Jr. (ASB-3162-H07J)
Kyle T. Smith (ASB-6752-I72K)
Alyse Windsor (ASB-8902-V72C)
**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
Tel:   (205) 930-5200
Fax:   (205) 212-3860
rbaugh@sirote.com
cchristie@sirote.com
ksmith@sirote.com
awindsor@sirote.com

Attorneys for Lamar Advertising Company

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................. ii

LAMAR'S BRIEF SUPPORTING LAMAR'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, MOTION TO STRIKE CLASS ALLEGATIONS..............................................................................................1

I.      SUMMARY OF ARGUMENT.................................................................1

II.     STATEMENT OF UNDISPUTED RELEVANT MATERIAL FACTS........3

III.    PLAINTIFF'S CONTINUED EMPLOYMENT WITH KNOWLEDGE OF LAMAR'S COMPENSATION PRACTICE ENTITLES LAMAR TO SUMMARY JUDGMENT.........................................................8

        A.    Plaintiff was an at will employee. .....................................................8

        B.    Lamar had the right to change the conditions of Plaintiffs' employment, including the terms of his compensation.........................9

        C.    Plaintiff had knowledge of the compensation practice he challenges in this lawsuit...................................................10

        D.    Because Plaintiff accepted the terms of his employment with Lamar, he cannot challenge those terms now. ...................................11

        E.    Lamar is entitled to entry of judgment on both Plaintiff's breach of contract and unjust enrichment claims.............................................14

IV.     CLASS CERTIFICATION IS INAPPROPRIATE BECAUSE COMMON QUESTIONS DO NOT PREDOMINATE OVER QUESTIONS REQUIRING INDIVIDUALIZED PROOF.........................15

        A.    Federal Rule 23(a) requires a showing of commonality and predominance. ...................................................................................16

        B.    Plaintiff's class allegations can and should be stricken. .....................18

        C.    Here, questions that require individualized proof overwhelmingly predominate over common questions...................................................19

              1.    The Parties' Claims and Defenses ...........................................19

        2.     Common Questions and Individualized Questions of Proof ....23

        3.     Predominance of Individual Questions ....................................27

    D.    The Eleventh Circuit *Vega* Case is controlling precedent. .................28

V.    CONCLUSION ............................................................................................30

CERTIFICATE OF SERVICE ..................................................................................31

**LAMAR'S BRIEF SUPPORTING LAMAR'S
MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY,
MOTION TO STRIKE CLASS ALLEGATIONS**

Defendant Lamar Advertising Company ("Lamar") submits this brief to support Lamar's Motion for Summary Judgment or, alternatively, Motion to Strike Class Allegations. Because Plaintiff Bryan Hughes, by continuing to work as an at will employee with knowledge of the compensation practice he challenges, without dispute impliedly agreed to that compensation practice, Lamar is entitled to summary judgment. Alternatively, because Plaintiff alleges claims for a nationwide class of employees for which common questions would not and could not predominate over those requiring individualized proof, this action should not be a purported class action, no matter how Plaintiff might amend his complaint or what discovery he might conduct, and thus Plaintiff's class allegations should be struck.

I.    **SUMMARY OF ARGUMENT**

As to Plaintiff's own claim against Lamar, he alleges that he did not agree to his General Manager's practice of having Lamar not pay Account Executive commissions if the customer paid after 90 days. Plaintiff alleges two claims – breach of contract and unjust enrichment. Both claims turn on whether Plaintiff as an at will employee knew about "this practice" he now challenges. Not only did Plaintiff know, for years he even calculated his own monthly compensation using "this practice." Lamar moves for summary judgment based on the indisputable

evidence that Plaintiff, as an at will employee, impliedly agreed to this practice by continuing to work after he knew he would not be paid commissions if the customer paid after 90 days.

As to the claims on behalf of the alleged class, Lamar disputes that any alleged class member, including Plaintiff, did not agree to accept compensation based on his not being paid commissions if the customer paid after 90 days. Lamar contends Plaintiff orally agreed, as well as impliedly consented. If a trial on the merits were appropriate, the primary liability issue as to Plaintiff would be whether he knew his own compensation, by either oral agreement or implied consent, included "this practice." For each alleged class member, a trial would require the same individual evidence for these issues.

As to the class allegations, Plaintiff alleges "the class members never consented to this practice." For both claims, for each alleged class member, a mini-trial would be required as to whether (1) "this practice" was used for him (or her), (2) he orally agreed to "this practice," (3) he was an at will employee who impliedly agreed to "this practice," (4) he had signed a written compensation plan including "this practice," (5) his subjective understanding as to whether and how "this practice" applied to him, (6) he had a severance agreement that would release any claim based on "this practice," and (7) the amount of commissions he was not paid based on "this practice."

In addition to the many individual fact questions, state law would vary on many questions for Account Executives in different states. And Plaintiff cannot cure these many varying fact and legal questions by amending his Complaint or by taking discovery. Therefore, individualized proof as to each alleged class member would predominate over any common questions and thus the alleged class should not and cannot be certified.

Without genuine dispute, Plaintiff continued to work as an at will employee with knowledge of the compensation practice he now challenges. Therefore, he impliedly consented to that practice and summary judgment should be granted in Lamar's favor for all claims.

Alternatively, Plaintiff's class allegations raise many questions requiring individualized proof for each alleged class member. Therefore, common questions do not and cannot predominate over questions requiring individualized proof and thus Plaintiff's class allegations should be struck from the Complaint.

## II.    STATEMENT OF UNDISPUTED RELEVANT MATERIAL FACTS

1.    Defendant Lamar Advertising Company ("Lamar") has indirect subsidiaries that sell advertising space on billboards and other media. Complaint ¶ 4; Declaration of Tom Traylor ("Traylor Decl.") ¶ 2 (filed as Exhibit 1 to Lamar's Motion for Summary Judgment or, Alternatively, Motion to Strike Class Allegations (Doc. 8)).

2.      Plaintiff was an Account Executive at Lamar's Birmingham plant (an independent sales office) from 2002 until his employment ended with Lamar as of June 30, 2017.  Complaint ¶ 13; Traylor Decl. ¶ 6.

3.      Tom Traylor is (and was when relevant) both the General Manager for the Birmingham and Gadsden plants and a Territory Manager for several other plants in Alabama. Traylor Decl. ¶ 3.

4.      For years before 2013 and to the present, Mr. Traylor as General Manger has had full discretion to decide how to compensate Birmingham and Gadsden Account Executives. As General Manager, he personally develops compensation plans for each Birmingham and Gadsden Account Executive. He solely approves payments for individually agreed upon commissions and decides whether Birmingham and Gadsden Account Executives will be eligible for and receive additional discretionary payments. Traylor Decl. ¶ 5.

5.      Lamar compensation for Account Executives at the Birmingham plant included commissions based on collections for billboard space sales. Complaint ¶ 14; Traylor Decl. ¶ 6.

6.      If a Lamar customer of the Birmingham plant paid 90 days late, the Account Executive was usually not paid a commission for that sale. Complaint ¶ 15-18; Traylor Decl. ¶¶ 8 & 20.

7.     The Lamar employee handbook, p. 4, makes clear that Account Executives are "at will" employees. Traylor Decl. ¶ 7 & Ex. B.

8.     To continue to hold at will positions as Account Executives, Birmingham and Gadsden Account Executives had to agree with Mr. Traylor's practice of not having Account Executive paid commissions if the payment was after 90 days. Traylor Decl. ¶ 8.

9.     In the Complaint ¶ 18, Plaintiff says he and other Lamar Account Executives "never consented to this practice." In context, "this practice" is Mr. Traylor's practice of having Account Executive commissions paid only if the customer pays within 90 days.  Complaint ¶¶ 14-20.

10.    According to Mr. Traylor, all Birmingham and Gadsden Account Executives orally agreed to accept "this practice" as part of their Lamar compensation. Traylor Decl. ¶ 10.

11.    Plaintiff's personnel file has several written partial compensation plans. Traylor Decl. ¶ 17 & Ex. E (Plaintiff's most recent 2010 plan).

12.    The 2010 compensation plan for Plaintiff says, "Management reserves the right to cancel this plan at any time." The 2010 compensation plan does not have all the employment terms and is not a complete compensation agreement. For example, it does not provide any time-frame and it does not mention Special Incentive Bonuses, the at will nature of the employment, employee benefits, and

the practice of not having Account Executive Commissions paid if customer payments are aged over 90 days. Traylor Decl. ¶ 18 & Ex. E.

13.    As explained below in paragraphs 14-18, Plaintiff by implication without genuine dispute "consented" and thus agreed to accept "this practice" as part of his Lamar compensation. Traylor Decl. ¶¶ 11-16.

14.    Each month, from at least 2012 until today, a Lamar Account Executive in the Birmingham plant calculates his or her own compensation. For each Account Executive, part of that calculation shows his or her not being compensated for collections that are over 90 days old. Traylor Decl. ¶ 12.

15.    Documents show that Plaintiff, with his own handwriting, calculated his own commissions monthly, using the Birmingham practice of not having Account Executive commissions paid if the account was collected after 90 days. Traylor Decl. ¶ 14-15.

16.    Each week, a Lamar Account Executive in the Birmingham plant reviews with a Lamar staff person the accounts receivable for that Account Executive's sales. One purpose for this review is to help the Account Executive to have aged accounts receivable collected before being more than 90 days old. Traylor Decl. ¶ 16.

17.    Weekly reports show that Plaintiff reviewed accounts receivable weekly with the Lamar staff person. Traylor Decl. ¶ 16 & Ex. D.

18.     Some Birmingham and Gadsden Account Executives signed written partial compensation plans that expressly agreed to accept "this practice" as part of their Lamar compensation agreement. Traylor Decl. ¶ 19 & Ex. F (two such plans).

19.     Many departing Account Executives across Lamar leave with a severance agreement releasing all claims against Lamar. Traylor Decl. ¶ 23 & Ex. H (two severance agreements). (Plaintiff did not have a severance agreement.)

20.     As a Territory Manager, Mr. Traylor also supervises the General Managers for Lamar's Decatur, Huntsville, Montgomery and Tuscaloosa plants. Traylor Decl. ¶ 24.

21.     As Territory Manager, Mr. Traylor has personal knowledge that the General Managers for plants under him other than the Birmingham and Gadsden plants have complete discretion to set the compensation of Account Executives for their plant. Traylor Decl. ¶ 25.

22.     For example, in the Montgomery plant, the General Manager has decided to pay commissions based on sales, not collections.  So, there is not an issue of paying commissions on older accounts receivable for the Account Executives in the Montgomery plant.  Traylor Decl. ¶ 26.

23.     Other Lamar plants outside of the Alabama region have adopted their own alternative compensation plans.  These plans make different choices regarding whether or not to pay salaries to Account Executives, what percentage commission

and when commissions are paid, or other alternatives for compensating Account Executives.  Traylor Decl. ¶ 27.

24.    In the Complaint ¶ 22, Plaintiff alleges the following nationwide class:

> All persons who worked as Account Executives in the United States at Lamar from the beginning of the statutory period to the present who sold advertising space, but were not paid commissions due to the advertising customer not paying its bill until after ninety (90) days or 120 days depending upon the threshold established by Lamar at the time.

III.   **PLAINTIFF'S CONTINUED EMPLOYMENT WITH KNOWLEDGE OF LAMAR'S COMPENSATION PRACTICE ENTITLES LAMAR TO SUMMARY JUDGMENT.**

Under Alabama law, an at will employee who continues to work under the terms that are offered to him consents and thus agrees to those terms and practices. Such an employee is precluded from later challenging those terms to which he impliedly consented. Plaintiff, without genuine dispute, knew of the compensation practice he challenges in this action.  Plaintiff consented to that practice by continuing to work for Lamar with knowledge of that practice. Lamar thus is entitled to summary judgment on each of Plaintiff's claims against it.

A.     <u>Plaintiff was an at will employee.</u>

Alabama law provides that employees are at will unless agreed otherwise. *See, e.g., Howard v. Wolff Broad. Corp.,* 611 So. 2d 307, 310 (Ala. 1992) ("It has long been the law in Alabama that employment is terminable at will by either party

for any reason unless there is an express and specific contract for lifetime employment or employment for a specific duration.").

The Lamar employee handbook states that its Account Executives, such as Plaintiff, are at will employees. Traylor Decl. ¶ 7. Therefore, Plaintiff, a Lamar Account Executive, was an at will employee.

### B.   Lamar had the right to change the conditions of Plaintiffs' employment, including the terms of his compensation.

In an at will relationship, "[t]he right to terminate an employee whenever the employer chooses necessarily includes the right to change the conditions of employment, including salary." *Stutts v. Sears, Roebuck & Co.,* 855 F. Supp. 1574, 1584 (N.D. Ala. 1994) (internal citations omitted) (emphasis added). Moreover,

> ". . . in the case of unilateral contracts for employment, where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation. In this manner, an original employment contract may be modified or replaced by a subsequent unilateral contract. The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer."

*Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 731 (Ala. 1987) (quoting *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 625-27 (Minn. 1983)).

Lamar, as Plaintiff's employer pursuant to an at will employment relationship, had the ability to set Plaintiff's salary and commissions at the rate of its choosing and to change those compensation terms at any time. Lamar thus had

the right to determine that it would not pay Plaintiff commissions on accounts that customers did not pay within 90 days, as alleged in Plaintiff's Complaint.

**C.    Plaintiff had knowledge of the compensation practice he challenges in this lawsuit.**

Plaintiff alleges in his Complaint that he did not "consent" to Lamar's practice of "not pay[ing] commissions for accounts where the customer failed to pay an invoice after ninety (90) days." Complaint ¶¶ 18-19. The allegations in Plaintiff's Complaint cover from 2013 to 2017. *Id.* ¶ 20. Plaintiff, however, *was aware* of the Lamar Birmingham plant's practice of not paying commissions on accounts over 90 days old during this entire time. Traylor Decl. ¶¶ 11-16; *see* Complaint ¶¶ 14-18 (by giving so many details, Plaintiff's implying he must have known about "this practice" while employed). Each week since at least 2012, the Business Manager for the Lamar Birmingham plant has reviewed the aged accounts receivable with Account Executives, including Plaintiff. Traylor Decl. ¶ 16. Plaintiff reviewed his aged accounts receivable with the Business Manager and was aware of the need to collect his aged accounts before they were 90 days old to collect a commission on those accounts. Plaintiff's knowledge of "this practice" is shown through his own calculations of the commissions owed to him in January and February 2013, as reflected on Plaintiff's January 2013 and February 2013 monthly reports. Traylor Decl. ¶ 14-15 & Ex. C.

D.   **Because Plaintiff accepted the terms of his employment with**
**Lamar, he cannot challenge those terms now.**

Because Plaintiff was aware of the compensation practices that form the basis of this lawsuit and because he continued working for Lamar with knowledge of those practices, he accepted the terms of employment that were offered to him. Plaintiff is precluded from recovering from Lamar for its implementation of a compensation practice that Plaintiff accepted.

In *Summers v. Ralston Purina Company*, the Supreme Court of Alabama held that a salesman who was aware of his employer's intention not to pay him bonuses for sales in a particular territory could not recover those unpaid bonuses. 69 So. 2d 858, 861-62 (Ala. 1954). The Court found that a bulletin issued on February 1, 1945, had initially created an obligation for the employer to pay the salesman bonuses on that territory. When the salesman spoke to his manager a week later, however, the manager told the salesman that the employer would not be paying him bonuses for that territory. The Court explained that, once the salesman knew of this policy and continued to work for the employer under those terms, the salesman had accepted the employer's offer to work under those terms and that any prior compensation agreements to the contrary had been extinguished.

In *Summers*, the Court stated:

The final and most important question concerns the effect of certain conversations between [the salesman's manager] and [the salesman] in Jackson, Mississippi, during February, 1945, the content of which

is undisputed. There, [the salesman] spoke with [his manager] about the bonus in question, and asked him whether he ([the salesman]) was going to receive any such bonus for working the Sherrel territory. According to [the salesman]'s own uncontradicted testimony, [his manager] answered that [the employer] had no intention of paying any bonus upon the Sherrel territory during Sherrel's temporary absence. We think it clear enough that after that conversation, [the salesman] knew the exact attitude of [the employer] concerning a bonus on the disputed territory.

Thus, even though [the employer]'s bulletin of February 1, 1945 amounted to a promise to pay [the salesman] a bonus on Sherrel's territory, that agreement was terminated by [the salesman's manager] at the Jackson meeting when [the salesman's manager] told [the salesman] that the [the employer] was not going to pay [the salesman] a bonus on said territory. In legal effect, the prior agreement to pay appellant a bonus on the Sherrel territory was eradicated, and an offer was made on the part of [the employer] to give [the salesman] employment thereafter on the basis outlined by [the salesman's manager]. [The salesman], by continuing to work, accepted [his manager]'s offer. From that date forward, a new and different contract, terminable at will, existed. Obligations under the prior agreement, also terminable at will, had been extinguished.

*Summers v. Ralston Purina Co.,* 69 So. 2d 858, 861-62 (Ala. 1954).

The *Summers* Court also rejected the salesman's arguments that he had disagreed with the change in the compensation terms at the time they were imposed, explaining that if the salesman did not like the terms of his employment, he had the option to resign. By choosing to continue under the terms offered to him, however, the salesman had accepted those terms. The Court explained:

Appellant [the salesman] argues that he dissented to any change in the terms of the original agreement. [The salesman]'s argument, however, is unavailing. If he did not like the terms imposed by the employer, he had the election to quit or not to quit. He could either accept the terms

imposed or resign. [The salesman] certainly could not continue to work, and over the express dissent of the employer hold said employer for something for which he had said he would not be liable. It is no answer to say that the employer could have discharged the employee. If anyone had to take any action toward severing the relationship, appellant [the salesman], the employee, was under the necessity of taking that step. Such is clearly the holding of Meaher v. Pomeroy, 49 Ala. 146, and Hodges v. Sublett, 91 Ala. 588, 8 So. 800. The only reasonable conclusion fairly to be drawn from the fact that Summers continued to work is that reluctantly he decided it was better to 'take it' than to 'leave it.'

*Summers,* 69 So. 2d at 862.

Similarly, when Plaintiff learned Lamar would pay him commissions only when the customer paid within 90 days, Plaintiff had the option to accept those terms or to resign. Plaintiff chose to accept those terms and continued working for Lamar under the terms offered to him. Plaintiff does not have the ability both to accept the terms of employment and to hold Lamar liable "for something for which [it] had said [it] would not be liable." *Summers*, 69 So. 2d at 862.

Because Plaintiff had knowledge of the Lamar Birmingham plant's compensation practices at all relevant times during his employment with Lamar and continued to work for Lamar under those terms, Plaintiff without genuine dispute consented to those practices and accepted Lamar's offer of at will employment under such terms. Plaintiff cannot recover from Lamar for paying him in accordance with the terms that were previously agreed upon and thus Lamar is entitled to summary judgment.

### E.   Lamar is entitled to entry of judgment on both Plaintiff's breach of contract and unjust enrichment claims.

Lamar is entitled to judgment in its favor on both Plaintiff's breach of contract and unjust enrichment claims. Both of those claims are based upon Lamar's payment of commissions in accordance with the practice that Plaintiff accepted through his continued employment with Lamar and thus both of those claims fail as a matter of law.

To recover on a breach of contract claim under Alabama law, a plaintiff must establish: "(1) the existence of a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) damages." *Capmark Bank v. RGR, LLC*, 81 So.3d 1258, 1267 (Ala. 2011)). Plaintiff cannot satisfy these elements. Plaintiff did not have a valid contract requiring Defendant to pay him commissions on accounts that were not paid within 90 days. In fact, Plaintiff consented to Lamar's practice of not paying commissions on such accounts, accepting employment under such terms. His disagreement with those terms now does not constitute a basis for him to recover on his breach of contract claim.

Plaintiff also cannot recover from Lamar under a theory of unjust enrichment. To prevail on a claim of unjust enrichment, a plaintiff must demonstrate that "(1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation."

*Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008). Again, Plaintiff cannot satisfy these elements. Plaintiff did not have a reasonable expectation of compensation from Lamar based upon accounts that were not paid within 90 days. As discussed above, Plaintiff was aware of the Birmingham plant's practice of not paying commissions on such accounts. Plaintiff accepted Lamar's offer of employment under such terms; it would not be reasonable for Plaintiff to expect payment of commissions under terms contrary to those he had accepted.

Plaintiff continued to work as an at will employee knowing the terms of employment he now challenges. Accordingly, under Alabama law, Lamar is entitled to summary judgment on both Plaintiff's breach of contract claim and his unjust enrichment claim.

## IV. CLASS CERTIFICATION IS INAPPROPRIATE BECAUSE COMMON QUESTIONS DO NOT PREDOMINATE OVER QUESTIONS REQUIRING INDIVIDUALIZED PROOF.

While Plaintiff's alleged class should not be certified because it fails to satisfy each of the class action requirements of commonality, typicality and superiority, the focus below is on predominance – the class action requirement that Plaintiff show common questions predominate over questions requiring individualized proof. *Cf. Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1278 (11th Cir. 2009) ("predominance . . . is perhaps the central and overriding prerequisite for a Rule 23(b)(3) class") (omitting citations and quotation marks).

Based on the Complaint's claims and the undisputed facts, Plaintiff cannot make a predominance showing. Moreover, Plaintiff's amending the Complaint or conducting discovery will not change his inability to meet the predominance requirement.  Because the Plaintiff cannot satisfy the predominance requirement, his class action allegations are due to be stricken.

### A.   Rule 23 requires a showing of commonality and predominance.

Under Fed. R. Civ. P. 23(a), for the alleged putative class, a plaintiff first must satisfy the prerequisites of "numerosity, commonality, typicality, and adequacy of representation." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187–88 (11th Cir. 2003). Under Fed. R. Civ. P. 23(b)(3), the plaintiff must also show that (1) common questions of law or fact predominate over questions affecting only individual class members ("predominance"); and (2) a class action is superior to other available methods for adjudicating the controversy ("superiority"). *Id*.

Rule 23's commonality requirement requires only that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The relatively light Rule 23(a)(2) commonality burden should not be merged with the Rule 23(b)(3) predominance requirement. *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1268 (11th Cir. 2009) (omitting citations and quotation marks); *see id*. at 1270 ("the

predominance inquiry . . . is far more demanding than Rule 23(a)'s commonality requirement") (omitting citations and quotation marks).

"Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Klay v. Humana, Inc*., 382 F.3d 1241, 1255 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639 (2008). The Eleventh Circuit has described the test for predominance as follows:

> Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3). . . . [I]f the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important. If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

*Id*. (omitting citations and quotation marks). "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug Co*., 350 F.3d at 1188 n. 15.

**B.**   <u>**Plaintiff's class allegations can and should be stricken**</u>.

Lamar moves to strike Plaintiff's class allegations pursuant to Fed. R. Civ. P. 12(b)(6), 12(f) and 23(d)(1)(D). *See Jones v. Depuy Synthes Prod., Inc.*, 330 F.R.D. 298, 305–06 (N.D. Ala. 2018) (indicating that, in rare cases, under these two rules, taken together, a court can strike a plaintiff's class allegations); *cf. Griffin v. Singletary,* 17 F.3d 356, 361 (11th Cir. 1994) (upholding an order granting a motion to strike class allegations without discussing the standard to apply); *Saunders v. BellSouth Advert. & Pub. Corp.*, No. 98-1885-CIV, 1998 WL 1051961 (S.D. Fla. Nov. 10, 1998) (granting motion to dismiss class action and ordering amendments for individual actions).

Lamar recognizes that striking class allegations before discovery is rare. *See Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) (finding motion to dismiss class allegations premature); *Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 F. App'x 930 (11th Cir. 2016) (interpreting *Mills* as holding that striking class allegations is premature when "discovery is needed to determine whether common issues predominate over any individualized questions"). Such a dismissal is appropriate, though, when additional discovery would not clarify the factual questions. *Nguyen v. St. Paul Travelers Ins. Co.*, No. CIV.A.06-4130, 2009 WL 23677 (E.D. La. Jan. 5, 2009) (striking class allegations and expressly following *Mills*); *see* Fed. R. Civ. P. 23(c)(1)(A) ("*Time to Issue*. At an early practical time

after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.").

As the argument below shows, in this action, Plaintiff cannot amend his Complaint or take discovery that would save his class allegations. For these reasons, this action is one of the rare cases where the rules provide for striking class allegations before discovery.

### C. Here, questions that require individualized proof overwhelmingly predominate over common questions.

As to predominance, in *Brown v. Electrolux Home Prod., Inc.*, the Eleventh Circuit described a three-step approach: (1) "identify the parties' claims and defenses and their elements," (2) "classify these issues as common questions or individual questions by predicting how the parties will prove them at trial," and (3) "determine whether the common questions predominate over the individual ones." 817 F.3d 1225, 1234-35 (11th Cir. 2016) (omitting citations and quotation marks).

### 1. The Parties' Claims and Defenses

Plaintiff asserts two causes of action against Lamar: breach of contract and unjust enrichment. He proposes a nationwide class as to each claim. He alleges almost no information about commonality and predominance issues, merging and intermingling his only Rule 23(a)(2) commonality and Rule 23(b)(3) predominance allegations into one paragraph, Complaint ¶ 24.

To recover on a breach of contract claim under Alabama law, a plaintiff must establish: "(1) the existence of a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) damages." *Capmark Bank v. RGR, LLC*, 81 So.3d 1258, 1267 (Ala. 2011)). For an at will employee such as Plaintiff, the contract's terms under Alabama law include those a plaintiff knew and impliedly accepted by continuing to work with knowledge of those terms. *Summers v. Ralston Purina Co.*, 69 So. 2d 858, 861-62 (Ala. 1954).

Most jurisdictions follow this same at will employee rule. *See, e.g., Stieber v. Journal Pub. Co.,* 901 P.2d 201, 204 (N.M. Ct. App. 1995) ("Under this rule, accepted in the majority of jurisdictions that have considered the problem, an employer's right to terminate an employee at will necessarily and logically includes what may be viewed as a lesser-included right to insist upon prospective changes in the terms of that employment as condition of continued employment."); *but see* Mont. Code Ann. § 39-2-904 (preempting all common law claims arising from employment contracts). Therefore, the legal framework for this issue may be common to most jurisdictions, but the application of the law would require consideration of what each Account Executive was told, how each Account Executive understood what he was told, and what each Account Executive then did in light of what he was told.

Moreover, because of the individualized fact questions, other aspects of contract law will be implicated, which differ from state to state. As Plaintiff's partial compensation plan and other written compensation plans show, Lamar's compensation plans for Account Executives vary significantly. *Compare* Traylor Decl. ¶ 17 & Ex. E (Plaintiff's most recent 2010 plan) *with id*. ¶ 19 & Ex. F (two signed plans for other Account Executives). If the terms of an Account Executive's compensation plan are unclear, it would be necessary to consider state-specific requirements for the interpretation of ambiguous contracts. Such law varies materially from state to state. As one court explained, "[v]ariations between the 50 states' laws governing the admission of extrinsic evidence to resolve putative class members' breach of contract claims also preclude a finding of predominance . . . ." *Gilman v. John Hancock Variable Life Ins. Co.*, No. 02-00051 AB, 2003 WL 23191098, at *12 (Fla. Cir. Ct. Oct. 20, 2003); *see also Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 02-80381-CIV., 2003 WL 21146714, at *13 (S.D. Fla. May 6, 2003), *report and recommendation adopted,* No. 02-80381-CIV, 2003 WL 22097937 (S.D. Fla. Sept. 2, 2003) (variations in several states' parol evidence rules would "overwhelm the common issues subject to generalized proof and defeat predominance").

Another contract claim legal issue turns on the period for Plaintiff's class definition, which as alleged starts "from the beginning of the statutory period."

Complaint ¶ 22. The statutes of limitation applicable to the breach of contract claims vary across jurisdictions. Some states have two separate statutes of limitations for breach of contract depending on whether the agreement is oral or written. *See, e.g.,* Cal. Code Civ. Proc. §§ 337, 339 (4-year statute for written contracts, 2-year statute for oral contracts); Ga. Code Ann. §§ 9-3-24, 9-3-25 (6-year statute for written contracts, 4-year statute for oral contracts). Because only some Account Executives have written compensation plans, an individualized inquiry for each putative class member would be required in many states to determine whether he had a written or oral compensation plan before the application of the varying statutes of limitations could occur and, even then, the statute of limitations vary by state.

As to the unjust enrichment claim, under Alabama law, a plaintiff must demonstrate that "(1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008).

Other state laws vary materially regarding the elements of unjust enrichment. Some states require a plaintiff to prove wrongful conduct to make a *prima facie* showing of unjust enrichment. *See, e.g., McIntosh v. Borchers*, 266 N.W. 2d 200, 203 (Neb. 1978) (fraud, misrepresentation, or other wrongful conduct must be alleged and proved to recover for unjust enrichment). Other states

do not, and instead simply examine the surrounding circumstances to determine whether the plaintiff was unjustly enriched. *See*, *e.g.*, *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996). Likewise, some states do not allow a plaintiff to assert an unjust enrichment claim when an express contract exists, *see*, *e.g.*, *Bowleg v. Bowe*, 502 So. 2d 71 (Fla. Dist. Ct. App. 1987), while other states do not recognize this limitation, *see*, *e.g.*, *Martinez v. Colorado Dep't of Human Servs.*, 97 P.3d 152, 159 (Colo. App. 2003).

Statutes of limitations also vary greatly from state to state for unjust enrichment claims. *See, e.g., O'Brien v. J.I. Kislak Mortg. Corp.*, 934 F. Supp. 1348, 1359 (S.D. Fla. 1996) (denying certification of nationwide class on unjust enrichment claims in part because the statute of limitations for this claim varies by state, raising individualized legal questions).

Because of these state-law differences, courts frequently deny class certification of unjust enrichment claims involving multiple states' laws. In addition, the legal framework for this issue will require consideration of what each Account Executive was told, how each Account Executive understood what he was told, and what each Account Executive did in light of what he was told.

### 2.    Common Questions and Individualized Questions of Proof

As to the two claims alleged on behalf of the alleged class, Plaintiff alleges "the class members never consented to this practice." Complaint ¶ 18. In other

words, Plaintiff's position is that Lamar and the putative class members did not have a compensation contract that included "this practice" and that Lamar unjustly enriched itself by not paying the agreed upon compensation.

Lamar contends that Account Executives in Birmingham and Gadsden, including Plaintiff himself, agreed to accept compensation based on not being paid commissions if the customer paid after 90 days. Traylor Decl. ¶ 10. Lamar contends Plaintiff orally agreed, as well as impliedly consented as an at will employee. Traylor Decl. ¶¶ 10-16. If a trial on the merits were appropriate, the primary issues as to Plaintiff individually would include whether Plaintiff's own compensation, by either oral agreement or implied consent as an at will employee, included "this practice." These same fact questions would require the same amount of additional proof for each individual alleged class member as for Plaintiff.

In addition, Plaintiff's class allegations incorrectly assume that Lamar has the same compensation practice for all Account Executives. Complaint ¶¶ 18-19 & 24. Instead, each General Manger decides how to compensate Account Executives, including whether to have "this practice" for the sales office ("plant") or for an individual. Traylor Decl. ¶¶ 24-27. For example, Lamar's Montgomery plant does not use "this practice" for any Account Executives. *Id.* ¶ 26. For each putative class member, it would be necessary to determine what type of compensation plan the Account Executive had, what the terms of that compensation plan were,

whether the compensation plan was written or oral, and whether the plant had "this practice" in place. While Plaintiff might argue that discovery is needed to explore which plants and for which individuals "this practice" applies, the need for such detailed discovery further shows how unworkable any class on the Complaint's two claims would be.

Furthermore, for each alleged class member, additional liability questions require individualized proof. While Plaintiff's written compensation plan did not expressly include "this practice," other Lamar Account Executives signed written compensation plans that expressly included "this practice." *Id.* ¶ 19. While Plaintiff did not have a severance agreement, many departing Account Executives across Lamar leave with a severance agreement that would release both claims alleged in this action. *Id.* ¶ 23. And each Account Executives' subjective understanding of his own compensation would have to be established at trial.

For putative class members who did not expressly agree in writing to this practice or who did not sign a severance agreement, individualized evidence of when the Account Executive knew he would not be paid commissions on aged accounts for purposes of determining when he accepted this practice would be required, pursuant to *Summers* and similar law applicable in other jurisdictions. Therefore, the date and circumstances surrounding putative class members' knowledge of the compensation practices would also require individualized proof.

Finally, damages could not be calculated reasonably for all class members. Each Account Executive can have different commission percentages for different types of sales, different plants have different compensation practices, and each sale for each Account Executive would have to be identified and then analyzed to see if paid late and by how many days used in that plant for "this practice" and whether a commission had already been paid. *Id*. ¶¶ 21-22 & 24-27.  *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1327 (11th Cir. 2010) (affirming class decertification "because [the plaintiffs] failed to establish that actual damages can be easily calculated for all class members"); *Klay*, 382 F.3d at 1260 ("It is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification.").

In summary, for both claims and for each alleged class member, a mini-trial would be required on whether (1) "this practice" was used for him (or her), (2) he orally agreed to "this practice," (3) he was an at will employee who impliedly agreed to "this practice," (4) he had signed a written compensation plan including "this practice," (5) he had a severance agreement that would release any claim based on "this practice," (6) his subjective understanding as to whether and how "this practice" applied to him, and (7) the percentage for commissions and the sales for which late payments were made and commissions thus not paid.

### 3.   Predominance of Individual Questions

In the Eleventh Circuit, "[c]ommon questions are ones where the same evidence will suffice for each [class] member." *Brown*, 817 F.3d at 1234. The only common question here might be whether the Birmingham and Gadsden plants have "this practice" for Account Executives. Because Lamar asserts that it has "this practice" in the Birmingham and Gadsden plants, but not in all plants, even this issue is not a common question for Plaintiff's alleged nationwide class.

"[I]ndividual questions are ones where the evidence will var[y] from member to member." *Id.* Again, except for arguably whether the Birmingham and Gadsden plants have "this practice" for Account Executives, all factual questions here are individual questions.

In addition to the overwhelming number of individual fact questions, state law would vary materially for Account Executives in different states. As indicated above, pp. 20-23, for claims like those alleged by Plaintiff, some courts do not certify nationwide classes because the variations in state law alone make individualized questions predominate over common questions.

In this action, the questions requiring individualized proof for each alleged class member predominate overwhelmingly over common questions. Plaintiff thus alleges a class that cannot be certified and his class allegations should be struck from the Complaint.

**D.**     **The Eleventh Circuit *Vega* Case is controlling precedent.**

The Eleventh Circuit case of *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009), has facts strikingly like this action. In *Vega*, the plaintiff, an at will employee, alleged a nationwide class, seeking sales commissions and alleging two counts, unpaid wages and unjust enrichment. *Id.* at 1260-63. The District Court found "the putative nationwide class lacked commonality due to variations in the contract and employment laws of the fifty states" and certified a class of employees in Florida only. *Id.* at 1263-64. On interlocutory review under Fed. R. Civ. P. 23(f), the Eleventh Circuit "h[e]ld that the district court abused its discretion in certifying the Florida only class, vacate[d] the certification order, and remand[ed] with the instruction that the plaintiff's claims proceed individually." *Id.* at 1260.

The Eleventh Circuit in *Vega* held Plaintiff had not shown commonality under a breach of contract theory, because the claims would depend on individualized facts, including "what the employee was told (and agreed to) with respect to compensation . . . , the employee's subjective understanding of how he would be compensated . . . , and when and how any pertinent part of the employee's compensation agreement or understanding thereof may have changed . . . ." *Id.* at 1272. "Additionally, [the employer] apparently would proffer individualized and varying evidence to defend against claims of individual class

members by showing what they knew or should have known" about the compensation program. *Id*. at 1274. "As such, the common questions would not predominate." *Id.*

As to the unjust enrichment claim, the Eleventh Circuit in *Vega* held that the "claim also lacks commonality and predominance." *Id*. "In short, common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts." *Id*. "[W]hether or not a given commission charge back was 'unjust' will depend on what each employee was told and understood about the commission structure and when and how commissions were 'earned.'" *Id*. at 1275. "The uncommon and individualized nature of this critical inquiry, and its foundational importance to the liability determination for each class member, renders class certification inappropriate." *Id.*

In this action, the similarity to the facts in *Vega* make clear that any class certification would be inappropriate. As in *Vega*, the contract and unjust enrichment claims depend on what each individual was told and how that individual subjectively understood what he was told. No amendments to the Complaint and no discovery could help Plaintiff cure these class defects. Therefore, in this action, the common questions cannot predominate over the individual questions and thus Plaintiff's class allegations should be struck.

V.    **CONCLUSION**

Based on Plaintiff's implied agreement with Lamar's offer of employment by continuing to work, as an at will employee, with knowledge of the compensation practice he challenges, summary judgment should be granted in Lamar's favor for both of Plaintiff's claims.

Alternatively, based on the many questions requiring individualized proof for each alleged class member, common questions do not predominate over questions requiring individualized proof and thus Plaintiff's class allegations should be struck from the Complaint.

/s/ J.S. "Chris" Christie, Jr
Robert R. Baugh (ASB-0312-A64R)
J.S. "Chris" Christie, Jr. (ASB-3162-H07J)
Kyle T. Smith (ASB-6752-I72K)
Alyse Windsor (ASB-8902-V72C)
**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
Tel:   (205) 930-5200
Fax:   (205) 212-3860
rbaugh@sirote.com
cchristie@sirote.com
ksmith@sirote.com
awindsor@sirote.com

Attorneys for Lamar Advertising Company

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2019, I electronically filed the foregoing with the court electronically, which will be sent to the following:

| | |
|---|---|
| Brian M. Clark, Esq.<br>Wiggins, Childs, Pantazis, Fisher &<br>Goldfarb, LLC<br>The Kress Building<br>301 Nineteenth Street North<br>Birmingham, AL 35203 | Charlie E. Robinson, Jr., Esq.<br>The Robinson Law Firm<br>P.O. Box 370<br>Ashville, AL 35953 |

s/ J.S. "Chris" Christie, Jr.
Attorney for Defendant Lamar Advertising
Company